## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————

JUANITA A. ROMANO,

      Plaintiff,

v.                                  Civil No. 03-837 WJ/RLP

CITY OF ALBUQUERQUE, and
Albuquerque Police Officer JAMES
W. PERDUE,

      Defendants.

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint Against Them [Docket No. 8]. Having reviewed the submissions of the parties and being otherwise fully advised, I find the motion is well taken in part and will be granted in part as follows.

## BACKGROUND

Plaintiff filed a Complaint in this Court on July 17, 2003. Her Complaint is brought pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202 and the New Mexico Tort Claims Act, N.M. Stat. Ann. 1978 § 41-4-1 et seq. Plaintiff alleges that Officer Perdue unlawfully seized her car by having it towed from the street in front of her home. She states in the Complaint that she received no notice that the car was to be towed and was given no opportunity for a pre-deprivation hearing. She further alleges she was given no notice of a right to a post-deprivation hearing. She states that these actions violated her rights under the Fourth, Fifth and Fourteenth

Amendments.  She seeks damages and injunctive relief.  She also seeks damages for violation of state law pursuant to the New Mexico Tort Claims Act.

Plaintiff asserts that at the time her vehicle was towed, it was properly registered, insured, had a proper license plate, was properly titled in her name, was properly parked, and was not an obstruction or hazard to traffic or the public.  Defendants, for purposes of summary judgment, offer evidence in the form of Officer Perdue's affidavit that, at the time the car was towed, the car's passenger window was open and could not be closed, the car was unlocked, there was no license plate on the car, and there was trash underneath the car.  Additionally, Officer Perdue had observed the car in the same condition on the previous day.  Officer Perdue ran the VIN number of the car through NCIC, and NCIC indicated the car was unregistered.  Officer Perdue checked inside the vehicle and was unable to find any information identifying the owner.

Plaintiff's evidence shows that Officer Perdue called in to NCIC a VIN number 1**4**57R4Z457965 while the VIN number of Plaintiff's vehicle was 1**H**57R4Z457965 (difference indicated in boldface type).  Plaintiff's evidence also indicates that Officer Perdue's stated reason for towing her car at the time was that the car was a hazard to the general public because the passenger window could not be closed and the vehicle was thus "unsecurable."  Officer Perdue's police report did not indicate that Plaintiff's car was without a license plate.

As noted above, Plaintiff's Complaint alleges that she had no prior notice of the towing and was given no pre-deprivation hearing.  Defendants do not dispute this.  Defendants assert that Plaintiff did not avail herself of any available post-deprivation procedures.  Defendants' evidence suggests that Plaintiff's available post-deprivation remedies included an opportunity to make an Internal Affairs Complaint against Officer Perdue or to complain to the Police Oversight

Commission about Officer Perdue.  Plaintiff counters that she was given no notice of any available post-deprivation procedures or her right to any post-deprivation hearing in spite of City Traffic Code § 8-5-2-5 which requires the Chief of Police to immediately notify the Mayor or the Mayor's designated representative that a vehicle has been towed, and requires the Mayor or representative to give written notice within 24 hours to the vehicle owner that the vehicle has been towed.  Section 8-5-2-5 requires that the notice include notice of a right to a hearing.

Plaintiff's Complaint asserts that her vehicle was sold at an auction and that she was never given notice by the City of Albuquerque of the impending sale of her vehicle.  Plaintiff's evidence shows that Section 8-5-2-5 of the City Traffic Code requires the Mayor or designated representative to send notice to the owner of a towed vehicle that the vehicle may be sold or otherwise disposed of if not claimed. For purposes of the motion for summary judgment, Defendants offer evidence that, at the request of Officer Perdue, Plaintiff's vehicle was towed and stored by New Mexico Towing which subsequently notified Plaintiff that it had possession of her vehicle.  New Mexico Towing sold Plaintiff's vehicle approximately seven months later when Plaintiff failed to retrieve the vehicle.  Officer Perdue, after setting a chain of events in motion, had no personal involvement in the subsequent actions taken by New Mexico Towing or action or lack thereof by the Mayor or his designated representative.  Plaintiff's responsive evidence suggests that New Mexico Towing had possession of the car for approximately eight days before Plaintiff learned of the whereabouts of the vehicle, New Mexico Towing refused to release the car to Plaintiff until she paid storage/ impound fees that already exceeded $100, that Plaintiff could not afford the fees, and that Officer Perdue assured Plaintiff that he would take care of the problem and get her vehicle back for her.

Defendants provide evidence by form of affidavit that Plaintiff did not provide a notice of her tort claim to the City of Albuquerque as required by N.M. Stat. Ann. 1978 § 41-4-16(A). Plaintiff does not dispute this but urges that the City had actual notice of her claim in accordance with Section 41-4-16(B) by virtue of Officer Perdue's police report of his towing of Plaintiff's vehicle, a police report filed by Plaintiff indicating that her car had been stolen and an Auto Theft Cancel Notification filled out by the Albuquerque Police Department indicating that Plaintiff's car had been recovered.

Defendants filed the instant motion asserting that Plaintiff's claims for injunctive relief under 28 U.S.C. §§ 2001 and 2002 are moot because Plaintiff's car has been sold and there is no realistic likelihood of a repetition of the events that occurred in this case.  Defendants submit that they are entitled to have Plaintiff's procedural due process claim dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted.  Alternatively, they argue they are entitled to summary judgment with regard to this claim.  Officer Perdue argues that he is entitled to qualified immunity with regard to Plaintiff's claims under 42 U.S.C. § 1983.  The City of Albuquerque contends that it is entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) with regard to Plaintiff's Section 1983 claims because Plaintiff has failed to allege facts to support municipal liability under Section 1983.  The City also argues that it is entitled to dismissal of Plaintiff's claims against it under the New Mexico Tort Claims Act based on Plaintiff's failure to comply with the notice requirements of N.M. Stat. Ann. 1978 § 41-4-16(A).  Finally, Defendant Perdue maintains that Plaintiff's demand for an award of punitive damages with regard to him must fail as a matter of law.

**LEGAL STANDARD**

4

While Defendants have requested dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and pursuant to Rule 56 in the alternative, the Court has considered matters outside the pleadings in ruling on Defendants' motion.  In accordance with Rule 12(b) and (c), the Court will apply the standards of Rule 56 in ruling on Defendants' motion.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000).  In ruling on a motion for summary judgment, a court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998).  In making this determination, the Court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  Worrell, 219 F.3d at 1204; Jeffries, 147 F.3d at 1228.

**DISCUSSION**

I.      PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF

Defendants assert that any claim by Plaintiff for injunctive relief is moot because Plaintiff's car has been sold and there is no reasonable expectation that any alleged official misconduct with regard to Plaintiff's vehicle will recur.  In her Response, Plaintiff concedes there is no longer any basis for injunctive relief and withdraws any claims seeking retrieval of her vehicle pursuant to 28 U.S.C. §§ 2201, 2202.  Thus, Plaintiff's claim for injunctive relief is dismissed.

II.     IS OFFICER PERDUE ENTITLED TO QUALIFIED IMMUNITY WITH REGARD TO PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983?

5

The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law.  Holland ex rel. Overdorff v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993).  For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity.  Hinton, 997 F.2d at 779.  When a defendant asserts a qualified immunity defense, a plaintiff bears the initial burden of making two showings.  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185.  First, the plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right.  Medina, 252 F.3d at 1128.  The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right. Holland, 268 F.3d at 1185.  If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred.  Id. at 1186.  The contours of the right must have been sufficiently clear at the time such that a reasonable official would have understood that his or her conduct was unlawful.  Id.  A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Camfield v City of Oklahoma City, 248 F.3d 1214, 1228 (10th Cir. 2001).  If a plaintiff makes the required showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment.  Hinton, 997 F.2d at 779.

6

A.    Plaintiff's Claims Pursuant to Section 1983 for Violation of her Procedural Due Process Rights Under the Fifth and Fourteenth Amendments

1.    Pre-Deprivation Process

Plaintiff alleges that Officer Perdue deprived her of her property without due process when he had her car towed without notice or any opportunity to be heard.  Plaintiff urges that Defendant Perdue violated the City Traffic Code (Code) in towing her car without prior notice. Section 8-5-2-2 of the Code prohibits any municipal police officer from removing or relocating any unattended vehicle from any street, alley or public way except as provided for in the Code. Section 8-5-2-3 provides for removal or relocation of abandoned vehicles after a notice is affixed to the car that includes information on an opportunity for a hearing.  Section 8-5-2-4 provides in relevant part for summary removal of abandoned vehicles with no prior notice only when the vehicle constitutes an obstruction or hazard to traffic or the public, when the vehicle has been reported stolen, or when the vehicle is parked illegally and signs are posted giving notice that illegally parked vehicles will be towed.

Officer Perdue's police report indicates that Plaintiff's car was towed on August 1, 2001 because it was unregistered whiled parked on a city street.  Additionally, the report states that the passenger window could not be closed "leaving the vehicle unsecurable and a hazard to the general public."  Officer Purdue, by affidavit, avers that there was no license plate on the vehicle and there was trash underneath the car.[1]  Further, he states that the car was in the same condition on July 31, 2001.

_____

[1]The Court notes that Plaintiff disputes Officer Perdue's report regarding the car's condition at the time it was towed.  The Court continues to assume the facts in Plaintiff's favor, but for purposes of Officer Perdue's authority to tow the vehicle, the Court notes that the towing was unauthorized by the City Traffic Code even if the car was in the condition reported by Officer Perdue.

Section 8-5-2-4 of the Code describes in detail the various ways in which a vehicle may be found to be a hazard or an obstruction.  Nowhere is a vehicle described as a hazard or obstruction subject to summary removal when it cannot be locked, when its windows are open, when it has trash under it, when it has no license plate or when it is unregistered.  By Plaintiff's own contentions, Officer Perdue was not authorized by the Code to tow Plaintiff's car without providing the notice required in Section 8-5-2-3.  Nothing about the condition of Plaintiff's car, even assuming its condition was exactly as reported by Officer Perdue, met the requirements of Section 8-5-2-4 for summary removal without prior notice.  Officer Perdue's removal of Plaintiff's car did not comply with the Code and thus, was not authorized by the Code.

In Hudson v. Palmer, a prisoner sued a prison guard for depriving him of property without due process because the guard allegedly removed items from the prisoner's cell without any pre-deprivation procedures.  468 U.S. 517, 533 (1984).  The United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally or negligently deprives a person of property, the act of the state employee is not authorized by some established procedure and the state makes available a meaningful post-deprivation remedy.  Id. at 533.[2]  Here, Officer Perdue's conduct was not authorized by any established procedure.  Therefore, in accordance with Hudson, there is no violation of the Due Process Clause for the failure to provide pre-deprivation notice and opportunity to be heard.  Because there was no constitutional violation, Officer Perdue is entitled to qualified immunity to the extent Plaintiff asserts a violation of her procedural due process rights for the initial towing of her car without prior notice and opportunity to be heard.

_____

[2]The Supreme Court does note that post-deprivation remedies do not satisfy due process when a deprivation of property is caused by conduct pursuant to established state procedure rather than random and unauthorized action.  Hudson v. Palmer, 468 U.S. at 532.

   2. <u>Post-Deprivation Process</u>

  Plaintiff alleges that Officer Perdue had her vehicle towed on August 1, 2001 which set in motion the events leading to the retention and sale of her vehicle.  She agrees, however, that Officer Perdue did not personally retain or sell her vehicle.  Plaintiff provides no evidence that Officer Perdue was personally involved or responsible for providing post-deprivation notice or opportunity to be heard.  Individual liability under 42 U.S.C. § 1983 must be based on personal involvement in the constitutional violation.  <u>Scull v. New Mexico</u>, 236 F.3d 588, 599 (10th Cir. 2000); <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997).  Here, Plaintiff does not allege or provide any evidence that Officer Perdue had any involvement in any alleged failure to provide adequate post-deprivation procedures with regard to the retention and sale of her car.  Therefore, Officer Perdue is entitled to qualified immunity with regard to Plaintiff's Fifth and Fourteenth Amendment claims for violation of her procedural due process rights for the retention and sale of her car because Plaintiff has failed to show Officer Perdue's personal involvement in a constitutional violation.

  B. <u>Plaintiff's Claims Pursuant to Section 1983 for Violation of her Fourth Amendment Rights</u>

   1. <u>Violation of a Constitutional Right</u>

  Plaintiff alleges that Officer Perdue violated her Fourth Amendment rights when he seized her car because the seizure was not reasonable.  Plaintiff argues that the lack of reasonableness is apparent because the seizure was in violation of the City Traffic Code Sections 8-5-2-2 through 8-5-2-4.  Defendants urge that Officer Perdue did not violate Plaintiff's Fourth Amendment rights when he seized her car because he was performing a community care-taking function when he had the vehicle towed.

Plaintiff's argument that Officer Perdue violated the Fourth Amendment because his conduct did not comply with the City Traffic Code is unavailing.  It is well settled that a violation of local law does not create a claim under Section 1983.  Rector v. City and County of Denver, 348 F.3d 935, 947 (10th Cir. 2003) (citing Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001)).  A city's failure to follow its own ordinances is actionable only if the actions fail to meet basic federal constitutional standards of the Fourth Amendment.  Id.

The Fourth Amendment guarantees the right of the people to be secure in their effects against unreasonable seizures.  U.S. Const. amend. IV.  The United States Supreme Court has recognized that law enforcement officers may impound and even search vehicles without a warrant when they are acting in a community care-taking function.  Cady v. Dombrowski, 413 U.S. 433 (1973).  Such impounds are seizures under the Fourth Amendment and must meet the reasonableness requirement of the Fourth Amendment.  See United States v. Donnes, 752 F.Supp. 411, 420 (D. Wyo. 1990) (citing United States v. Pappas, 735 F.2d 1232, 1234 (10th Cir. 1984)) reversed on other grounds by United States v. Donnes, 947 F.2d 1430 (10th Cir. 1991). "The underlying premise of the Fourth Amendment is that warrantless searches and seizures are per se unreasonable except for a few narrowly defined exceptions."  Lavicky v. Burnett, 758 F.2d 468, 474 (10th Cir. 1985).  Seizures under the community care-taking function are an exception to the warrant requirement and are only reasonable when they fall squarely within the exception. See United States v. Bute, 43 F.3d 531 (10th Cir. 1994).  The government bears the burden of proving that a warrantless seizure falls within a specific exception to the warrant requirement. Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003).

The United States Supreme Court, in recognizing the community care-taking exception to the warrant requirement, noted that impoundment of a car was for elemental reasons of safety

when the car was disabled in an accident, was a nuisance along a highway, and was unable to be
moved by the driver due to the driver's intoxication. Cady, 413 U.S. at 443. The Court expressly
noted that the car at issue in Cady was not parked adjacent to the home of the vehicle's owner nor
simply momentarily unoccupied on a street. Id. at 447. The Court pointedly compared the car in
Cady to the nuisance of an "obviously abandoned vehicle." Id.

      The community care-taking exception to the warrant requirement of the Fourth
Amendment has been recognized most often in cases where the driver of a vehicle has been
arrested. For instance, there is no doubt that impoundments are reasonable when a driver is
arrested and officers cannot ascertain ownership of the vehicle. See United States v. Haro-
Salcedo, 107 F.3d 769, 771 (10th Cir. 1997); United States v. Horn, 970 F.2d 728 (10th Cir.
1992); United States v. Long, 705 F.2d 1259, 1262 (10th Cir. 1983). Impoundments are also
reasonable when a driver is arrested, there is no one available to take custody of the vehicle on
behalf of the driver, and the vehicle is subject to vandalism or theft if not impounded. See United
States v. Kornegay, 885 F.2d 713 (10th Cir. 1989); United States v. Hope, 102 F.3d 114 (5th Cir.
1996); but see United States v. Roth, 944 F.Supp 858, 862 (D. Wyo. 1996) ("something more
must be shown to justify impoundment of a car than that it would otherwise be left unattended.");
United States v. Cooley, 119 F.Supp.2d 824, 827-28 (N.D. Ind. 2000) (finding that the
community care-taking function permits police to remove vehicles that jeopardize both the public
safety and the efficient movement of traffic, but protection from vandalism is not a valid reason to
impound a car).

      There are no cases in which a court has decided that the community care-taking exception
to the warrant requirement permits impoundment of vehicles absent the arrest of the driver or
absent some public safety concern such as the removal of disabled cars along a highway,

Cady, 413 U.S. at 443, or removal of obviously abandoned cars, Id.  In this case, Plaintiff's car did not come to the attention of Officer Perdue following an arrest or an accident involving the car.  The undisputed facts show that Plaintiff's car was parked on the street in front of Plaintiff's home at the time Officer Perdue ordered it to be towed.  The Defendants have failed to show that the community care-taking exception applies in this case.  While the community care-taking exception might apply if Plaintiff's car was "obviously abandoned" or was illegally parked in a manner to create a public safety concern, there are disputed issues of material fact with regard to whether Plaintiff's car, at the time Officer Perdue ordered it towed, met any of these conditions.  Assuming the facts in a light most favorable to Plaintiff for purposes of the motion for summary judgment, there are material questions of fact over whether Officer Perdue's conduct violated Plaintiff's Fourth Amendment rights.

2.      Whether the Right was Clearly Established

Even if Officer Perdue's conduct violated Plaintiff's Fourth Amendment rights, he would be entitled to qualified immunity if the right was not clearly established at the time he towed Plaintiff's car.  Tenth Circuit and Supreme Court jurisprudence has enduringly held that searches or seizures without a warrant are presumptively unreasonable under the Fourth Amendment subject only to a few specific, narrow exceptions.  Roska, 328 F.3d at 1248.  As noted above, no case has extended the community care-taking exception to allow for the seizure of a car that was lawfully parked on a street, was not "obviously abandoned,"[3] and was not brought to police attention based on the car's involvement in a vehicular accident or the arrest of the driver.  There

---

[3]As noted previously, there are disputed issues of material fact with regard to whether the car was legally parked or "obviously abandoned."  For purposes of the motion for summary judgment, the Court assumes the facts in a light most favorable to Plaintiff and thus assumes that the car was lawfully parked and was not "obviously abandoned."

is no case law that has injected any degree of uncertainty as to whether a car might be lawfully impounded under such circumstances. Cf. Roska, 328 F.3d at 1249 (finding in the circumstances of that case that, while Fourth Amendment principles had been clearly established, case law had injected a degree of uncertainty into an otherwise cardinal rule). The law was clearly established at the time of the seizure that a law enforcement officer may not seize private property without a warrant unless one of the exceptions to the warrant requirement is met. Further, no reasonable officer could have believed that towing a lawfully parked car that was not obviously abandoned fits within his community care-taking function; a reasonable official would have understood that this conduct was unlawful. Thus, Officer Perdue is not entitled to qualified immunity with regard to Plaintiff's Fourth Amendment claim.

III.    MUNICIPAL LIABILITY FOR THE 42 U.S.C. § 1983 CLAIMS

A municipality cannot be held liable for the actions of its employees under the theory of respondeat superior. See Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). It must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action. See e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83 (1986) (plurality opinion); Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000); Murrell v. School Dist. No. 1, 186 F.3d 1238, 1248-49 (10th Cir.1999).

In response to Defendants' argument that the City of Albuquerque is entitled to summary judgment on the issue of municipal liability under Section 1983, Plaintiff states that she needs time to conduct discovery and requests she be granted a Fed. R. Civ. P. 56(f) stay on Defendants' motion. Summary judgment should not be granted when a nonmoving party has not had an opportunity to discovery information essential to opposing the motion. Committee for First

Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  Under Rule 56(f), a court may refuse an application for summary judgment or may order a continuance to permit a nonmovant to obtain discovery to oppose a motion for summary judgment.  Fed. R. Civ. P. 56(f).  When requesting relief pursuant to Rule 56(f), a party is required to submit an affidavit explaining why facts precluding summary judgment cannot be presented, the probable facts not available, and the steps taken to obtain facts.  Campbell, 962 F.2d at 1522.  Unverified statements by attorneys in their briefs do not satisfy the Rule 56(f) requirement.  Id.  Moreover, a request for relief under Rule 56(f) must contain more than a conclusory statement that the nonmovant will be able to oppose the motion if given discovery.  See  Jarvis v. Nobel/Sysco Food Serv. Co., 985 F.2d 1419 (10th Cr. 1993).  Because Plaintiff failed to provide an affidavit in support of her request for relief under Rule 56(f) and only supported the request with unverified, conclusory statements by her attorney in her brief that discovery is necessary, Plaintiff is not entitled to a continuance to conduct discovery.

      A.      <u>Plaintiff's Procedural Due Process Claims</u>

            1.      <u>Pre-Deprivation Process</u>

The City of Albuquerque is entitled to dismissal of any claim based on Officer Perdue's alleged violation of Plaintiff's procedural due process rights when he towed her car without any pre-deprivation notice or opportunity to be heard.  The Court has determined that there was no constitutional violation.  Therefore, there is no basis for liability on the part of the municipality.  See Monell, 436 U.S. at 694 (a plaintiff suing a municipality under section 1983 for the acts of one of its employees must first prove that a municipal employee committed a constitutional violation).

2.      Post-Deprivation Process

Plaintiff's claim that her procedural due process rights were violated when the City of Albuquerque failed to notify her that her car had been towed and impounded and that she had a right to a hearing with regard to the validity of the towing and impoundment is not a claim against Officer Perdue as he was not personally involved in any such alleged failure.  Plaintiff did not identify or name as a defendant a specific city employee responsible for this alleged violation.

A city may be held liable for an official policy or custom which proximately causes a constitutional deprivation.  Fletcher v. O'Donnell, 867 F.2d 791, 793-4 (3rd Cir. 1989) (citing Pembaur, 475 U.S. at 481-82 and City of Oklahoma v. Tuttle, 471 U.S. 808 (1985)); cf. Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).  Plaintiff offers no evidence of a city custom that fails to provide adequate notice regarding towed vehicles and an owner's right to contest the validity of the tow.  In fact, Plaintiff's own evidence shows that City Traffic Code Section 8-5-2-5 requires the Mayor or the Mayor's designated representative to provide such notice to owners of towed vehicles.   Plaintiff has failed to show that any alleged violation of her Fifth and Fourteenth Amendment rights to due process was proximately caused by an official policy or custom.  Therefore, the City of Albuquerque is entitled to dismissal of Plaintiff's claims under the Fifth and Fourteenth Amendments.

B.      Plaintiff's Fourth Amendment Claim

As with Plaintiff's claim for violation of her procedural due process rights, Plaintiff offers no evidence and does not allege that the City had a policy or custom permitting Officer Perdue or others to tow cars under the circumstances alleged in this case.  Plaintiff's own evidence actually proves otherwise by showing that the City Traffic Code Sections 8-5-2-2 through 8-5-2-4 proscribe the towing of vehicles under such circumstances.  Because Plaintiff has failed to show

15

any disputed issue of fact with regard to the existence of a municipal policy or custom that proximately caused a constitutional violation, Defendant City of Albuquerque is entitled to summary judgment on the issue of municipal liability under Section 1983.

IV.    PLAINTIFF'S CLAIMS UNDER THE NEW MEXICO TORT CLAIMS ACT

The tort liability of governmental entities in New Mexico and their employees is limited by the specific provisions of the New Mexico Tort Claims Act (NMTCA).  Pemberton v. Cordova, 734 P.2d 254, 255 (N.M. App. 1987).  Under the NMTCA, governmental entities and their employees are immune from suit unless the NMTCA specifically waives immunity.  N.M. Stat. Ann. 1978 § 41-4-4(A); Weinstein v. City of Santa Fe, 916 P.2d 1313, 1315 (N.M. 1996).

Section 41-4-16 of the NMTCA provides that no governmental entity may be sued under the NMTCA unless the claimant provides the entity with a notice of claim within 90 days of the incident giving rise to the claim.[4]  Such notice must usually be written notice indicating the time, place, and circumstances of the of the loss or injury.  N.M. Stat. Ann. 1978 § 41-4-16(A).  When a municipality is sued, such notice must be sent to the Mayor.  Id.

When a claimant has not provided a governmental entity a written notice of claim, the governmental entity may still be sued under the NMTCA if it has received actual notice of a claim. N.M. Stat. Ann. 1978 § 41-4-16(B).  "Actual notice" under the NMTCA is not simply actual notice of an occurrence of an accident or injury but actual notice of the likelihood that litigation may ensue.  Frappier v. Mergler, 752 P.2d 253, 256 (N.M. App. 1988).  Under some circumstances, a police report or other similar document can serve as actual notice under

---

[4]The Court notes that an individual employee may be sued under the NMTCA, and that the notice requirement does not apply to such claims.  See N.M. Stat. Ann. 1978 §§ 41-4-4, 41-4-16.  The Court also notes that Plaintiff's claim under the NMTCA names only the City of Albuquerque as a Defendant.

NMTCA, but only when the report contains information which puts the governmental entity on notice that there is a claim against it. City of Las Cruces v. Garcia, 690 P.2d 1019, 1021 (N.M. 1984).

Defendant City of Albuquerque states that Plaintiff did not provide it with a notice of claim in accordance with N.M. Stat. Ann. 1978 § 41-4-16(A). Plaintiff does not dispute this. Instead, Plaintiff urges that the City had actual notice of the claim based on Officer Perdue's August 1, 2001 police report regarding the towing of Plaintiff's car, the police report filed by Plaintiff on August 2, 2001 in which she reported her car stolen, and the August 6, 2001 Auto Theft Cancel Notification by which the Albuquerque Police Department noted that Plaintiff's car had been "recovered" by Officer Perdue on August 1, 2001.

The police reports and the Theft Cancel Notification may have provided the City of Albuquerque with sufficient information that the incident involving the towing of Plaintiff's car had occurred. However, these documents on their face do not, even taken together, provide the City with actual notice of the likelihood that litigation may ensue. Therefore, the City did not have actual notice of Plaintiff's claim, and the City is entitled to summary judgment on Plaintiff's claim under the New Mexico Tort Claims Act.

V.     PLAINTIFF'S PRAYER FOR PUNITIVE DAMAGES

Defendants argue that they are entitled to summary judgment with regard to Plaintiff's prayer for punitive damages against Officer Perdue because, as a matter of law, Plaintiff has failed to provide sufficient evidence from which a reasonable jury could find that Officer Perdue acted with the requisite evil motive, intent, or reckless or callous disregard to Plaintiff's federally protected rights. There are disputed issues of material fact with regard to Officer Perdue's intent.

Therefore, Defendants are not entitled to summary judgment with regard to Plaintiff's prayer for punitive damages.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint Against Them [Docket No. 8] is hereby GRANTED IN PART in that:

1.    Plaintiff's claims for injunctive relief are hereby DISMISSED;

2.    Plaintiff's claims against Officer Perdue for violation of the Fifth and Fourteenth Amendments are hereby DISMISSED based on Qualified Immunity;

3.    Plaintiff's claims against the City of Albuquerque under 42 U.S.C. § 1983 are hereby DISMISSED; and

4.    Plaintiff's claim against the City of Albuquerque under the New Mexico Tort Claims Act is hereby DISMISSED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint Against Them [Docket No. 8] is hereby DENIED IN PART with regard to Plaintiff's claim against Officer Perdue for violation of the Fourth Amendment and with regard to Plaintiff's prayer for punitive damages.

_____
UNITED STATES DISTRICT JUDGE